# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

MICHAEL J. ETCHASON                      Civil No. 07-3536 (JNE/AJB)

        Plaintiff,

v.                                                **REPORT AND RECOMMENDATION**

MICHAEL J. ASTRUE
Commissioner of Social Security,

        Defendant.

_____

    Frederick J. Daley, Jr., 55 W. Monroe St., Suite 2440, Chicago, IL 60603 and Nancy Coyle Strahan, 1744 Glenview Ave., Arden Hills, MN 55112 on behalf of Plaintiff.

    Lonnie F. Bryan, Assistant United States Attorney, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, on behalf of Defendant.

_____

    Plaintiff Michael Etchason ("Mr. Etchason") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits and Supplemental Security Income. See 42 U.S.C. § 1382 (c). This Court has jurisdiction over the claim pursuant to 42 U.S.C. § 405 (g). This matter was referred to the undersigned United States Magistrate Judge for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. The parties have submitted cross-motions for summary judgment. [Dockets # 13 and #17]. For the reasons set forth below, this Court recommends that Defendant's motion for summary judgment [Docket # 17] be granted and Plaintiff's motion for summary judgment [Docket No. 13] be denied.

1

## I.  INTRODUCTION

Mr. Etchason applied for disability insurance benefits and social security income on June

11, 2003. (Tr. 89-91, 525-27). He is alleging disability beginning November 15, 2002. (Tr. 91,

525). The application was initially denied on October 30, 2003, and upon reconsideration on

April 5, 2004. (Tr. 40-44, 50-62, 528-31, 533-35). He appeared before Administrative Law

Judge ("ALJ") Larry Meuwissen on January 10, 2006. (Tr. 549-94).  On May 18, 2006, the ALJ

issued an unfavorable opinion against Mr. Etchason. (Tr. 21-31).

On April 27, 2007, his appeal was denied by the Social Security Appeals Council. (Tr.

10-12). The denial of review made the ALJ's findings the final decision of the defendant. 20

C.F.R. §§ 404.981, 416.1481. Mr. Etchason initiated review of this action on July 27, 2007

[Docket #1].

## II.  STATEMENT OF FACTS

1.    <u>Plaintiff's Background</u>

Mr. Etchason was born on January 22, 1960, and was 44 years old at the time of his

hearing. (Tr. 85). He was roughly 5'11" tall and weighed 325 pounds. (Tr. 110, 151, 554). He

had a high school GED and a certification for welding. (Tr. 117, 158). He worked as a truck/taxi

driver, welder, laborer, and sanitation worker. (Tr. 112, 118, 131-38, 153, 158, 179-82, 205,

209).

2.    <u>Medical Evidence</u>

    a. <u>Prior to Alleged Onset of Disability</u>

In May 2001, Mr. Etchason was seen for leg and foot pain when standing for longer

periods of time. (Tr. 244, 246). He reported edema when he was on his feet for 10-12 hours a

day. (Tr. 246). He was instructed to cease smoking, elevate his legs, and follow a low-salt diet.

2

(Tr. 245). Later in May 2001, he reported that he felt tired and possibly was suffering from sleep apnea. (Tr. 243).

On June 19, 2001, Mr. Etchason reported attention deficit problems and bipolar depression to psychologist Diane Pagel, L.P., at the Allina Medical Clinic. (Tr. 221). He indicated that he felt depressed nearly every day since he was eight years old. (Tr. 221).  The psychologist diagnosed him with bipolar disorder, alcohol dependence, cannabis dependence, and caffeine intoxication. (Tr. 224). She recommended that Mr. Etchason see a psychiatrist and continue therapy. (Tr. 224).

In July 2001, Mr. Etchason also reported to Dr. Warren Shepard that he was experiencing leg and foot pain, hypertension, and edema (Tr. 240-46). He was instructed to stop drinking alcohol. (Tr. 240).

In August 2001, Mr. Etchason underwent a sleep study conducted by Dr. Keith Leavell for possible sleep apnea. (Tr. 228). He was assessed with very severe sleep apnea with a recommendation for a tracheotomy. (Tr. 228).

On August 22, 2001, Dr. Shepard also gave the opinion that a tracheotomy might be his best option. (Tr. 236). He noted that Mr. Etchason had no improvement on Lithium and continued him on Verapamil and Eskalith. (Tr. 236-37).

On September 24, 2001, Mr. Etchason saw Dr. Rick Nissen who noted that he had depression, sleep apnea, and was overweight. (Tr. 231). Mr. Etchason reported that he had no trouble breathing through the nose or mouth. (Tr. 230).

Mr. Etchason saw Dr. Shepard on September 25, 2001, for his depression, hypertension, sleep apnea, and asthma. (Tr. 234). Dr. Shepard prescribed Lithium, Tiazac, a nicotine patch, and aspirin. (Tr. 234).

3

On October 9, 2001, he saw a podiatrist, Dr. David Maher, who treated him for plantar fasciitis. (Tr. 232). Dr. Maher advised Mr. Etchason to elevate his legs and wear his orthotics. (Tr. 232).

On November 13, 2001, Dr. Shepard advised Mr. Etchason to elevate his legs and to continue salt restrictions and medications for his edema. (Tr. 398).

On December 7, 2001, Dr. Charles Grant, a state agency physician reviewed the medical evidence and concluded that Mr. Etchason could lift ten pounds occasionally and frequently; stand and walk for two hours; sit for six hours; and needed to avoid exposure to heights and machinery. (Tr. 249, 252). On December 10, 2001, Dr. Dan Larson, a state agency psychologist determined the following regarding Mr. Etchason's mental RFC:

> Clinical data support bipolar disorder and history of chemical abuse. Pt. is able to live with his family. He reports on ADL form that he is unable to do household chores such as cooking, cleaning, and shopping. He is able to drive and to handle money. He participates in childcare. He has a close friend. He suggests on ADL form that he is able to get along with authority. Concentration and stress tolerance are some down but overall level of function suggests that these are sufficient for simple tasks. Pt. has not deteriorated in a work or work like setting. Evidence is mostly consistent and credible.

>> The claimant retains the capacity to concentrate on, understand, and remember routine, repetitive instructions, but would have marked problems with both detailed and complex instructions.

>> The claimant's ability to carry out tasks with adequate persistence and pace would be moderately impaired, but adequate for routine, repetitive tasks, but not for detailed or complex tasks.

>> The claimant's ability to interact and get along with co-workers would be moderately impaired, but adequate for brief, infrequent, and superficial contact.

>> The claimant's ability to interact with the public would be moderately impaired, but adequate for brief and superficial contact.

4

The claimant's ability to follow an ordinary routine would be moderately impaired, but adequate to function with the oridnary level of supervision found in most customary work settings.

The claimant's abilty to accept supervision would be moderately impaired, but adequate to cope with ordinary levels of supervision found in a customary work setting.

The claimant's ability to handle stress would be moderatley impaired, but adequate to tolerate the routine stresors of a routine, repetitive work setting.

(Tr. 261).

On January 29, 2002, Mr. Etchason saw Dr. Shepard for a follow-up with his edema and depression. (Tr. 394). Dr. Shepard prescribed Wellbutrin, Avalide, and Celexa. (Tr. 394).

b.      After the alleged onset date

On March 10, 2003, Mr. Etchason saw Dr. Brett Oden for his swollen legs. (Tr. 314). He stated that he was unable to work as a welder because he could not stand. (Tr. 314).  Dr. Oden observed that Mr. Etchason was morbidly obese with an elevated blood pressure and edema on both ankles. (Tr. 314).  Dr. Oden prescribed Diovan for hypertension. (Tr. 314).

On April 1, 2003, Mr. Etchason saw Dr. Bernice Kolb, who diagnosed him with hypertension, obesity, and sleep apnea. (Tr. 311).

On April 10, 2003, he saw a therapist, Todd Larson, as part of his participation in Central Minnesota Jobs and Training Services. (Tr. 318). Mr. Etchason stated that he worked the previous summer as a dump truck driver. (Tr. 318). The therapist stated that he appeared angry, but respectful and of average intelligence. (Tr. 319). Mr. Larson noted a history of depression, emotional outbursts, a history of frequent unemployment, and a history of substance abuse. (Tr. 318-19). Mr. Etchason continued to see Mr. Larson on a monthly basis. (Tr. 321, 329, 330-32, 335).

5

Mr. Etchason saw Dr. Kolb on April 17, 2003. (Tr. 277-79). Mr. Etchason reported several sleep-related problems: snoring, sleep apnea, falling asleep at inopportune times, non-restorative sleep, and night sweats. (Tr. 277). Dr. Kolb told Mr. Etchason that he should lose weight, quit smoking, and wear support hose in the morning for venous insufficiency. (Tr. 279).

On May 19, 2003, Mr. Etchason underwent a sleep study which confirmed a diagnosis of severe sleep apnea. (Tr. 280-93). He was again encouraged to lose weight after another sleep study. (Tr. 283).

On June 26, Mr. Etchason underwent pulmonary function testing, which was normal. (Tr. 295-99).

On September 10, 2003, Mr. Etchason underwent a psychiatric evaluation with Dr. Roger Handrich. (Tr. 316-17). He claimed that he could not work because he could not forget a mistake, walked off jobs, had chronic pain from a broken back in 1980, and had edema in his legs for two years. (Tr. 316). He was assessed with a personality and mood disorder and was prescribed Trileptal. (Tr. 317). He continued to see a therapist twice a month until January 2004. (Tr. 329-35).

On October 11, 2003, Dr. Charles Grant, a state agency physician, completed a Physical Residual Functional Capacity Form and indicated that Mr. Etchason could do sedentary work with occasional climbing, balancing, stooping, kneeling, crouching, and crawling due to sleep apnea, obesity, hypertension, and venous insufficiency. (Tr. 351-54). He also indicated that Etchason could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk for about 6 hours in an 8-hour workday, and sit for a total of about six hours in an 8-hour workday. (Tr. 352).

Dr. Thomas Kuhlman, a state agency physician determined on October 26, 2003, that Mr. Etchason had a personality disorder, and impulsive and damaging behavior, including persistent disturbances of mood or affect with intense and unstable interpersonal relationships. (Tr. 344).

Mr. Etchason underwent psychological testing on December 4 and December 10, 2003. (Tr. 322-27). Mr. Etchason demonstrated normal motor activity and his memory was intact. (Tr. 322). He was diagnosed with dysthymic disorder, alcohol abuse, substance abuse, and a personality disorder. (Tr. 326). The testing revealed exaggerated response indicative of a person who magnified the level of experienced illness. (Tr. 322).

In October 2003 and March 2004, state agency psychologists reviewed the evidence and concluded that Mr. Etchason had mild-to-moderate difficulties in social functioning, concentration, persistence, and pace. (Tr. 347). Mr. Etchason had some moderate limitation, but had the Residual Functioning Capacity to learn and remember 1-2 step instructions; perform simple, repetitive tasks for two hours at a time; get along with co-workers and supervisors if contacts were brief, infrequent, and superficial; and adapt to typical stressors and changes occurring during routine and repetitive tasks, within a low to moderately low pressured work environment. (Tr. 364).

Between October 2003 and July 2004, Mr. Etchason was seen by a chiropractor for low back pain and assistance with losing weight. (Tr. 391).

In June 2004, he reported that he had increased back soreness from lifting things while moving over the weekend. (Tr. 392).

In August 2004, Mr. Etchason underwent a commercial driver fitness examination with Dr. Pamela Brett for the Department of Transportation. (Tr. 421, 428). He met the standards to drive, but was qualified for only one year due to hypertension. (Tr. 421, 430). He reported high

blood pressure, depression, a sleep disorder, and chronic low back pain. (Tr. 428). Dr. Brett noted that he had obesity, depression, peripheral edema, respiratory abnormalities, an enlarged liver, varicose veins, and hypertension. (Tr. 421).

In September 2004, Mr. Etchason reported that he was unable to obtain employment. (Tr. 419). Dr. Brett stated that he believed Mr. Etchason had a long-term mental impairment that impeded his ability to live and work independently. (Tr. 420).

In October and December 2004, Mr. Etchason reported that things were going well and his hypertension and edema were under control. (Tr. 413, 415).

In February 2005, Mr. Etchason reported difficulty with stress and indicated that he was unable to work. (Tr. 410).

From October 2004 to June 2005, Mr. Etchason saw a social worker, Barry Evans, and psychiatric treatment by Dr. Meller at Woodlawn Centers. (Tr. 433-52). Mr. Evans indicated Mr. Etchason had a GAF[1] score of 50, with bipolar disorder, and narcissistic personality traits. (Tr. 443).

On November 22, 2004, his therapist assessed him with a GAF score of 50. (Tr. 437- 38). In December 2004, he was found eligible for vocational rehabilitation by the Minnesota Department of Employment. (Tr. 483). In January 2005, Mr. Etchason reported that medication caused ringing in his ears. (Tr. 436). In June 2005, he had a GAF score of 45 upon discharge from the Woodland Center. (Tr. 433). On June 23, 2005, his GAF score was assessed at 50. (Tr. 461).

_____

[1]A GAF score of 31 to 40 means "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood." A GAF score of 41 to 50 means "serious symptoms or serious impairment in social, occupational or school functioning." A GAF score of 51 to 60 means "moderate symptoms or moderate difficulty in social, occupations or school functioning."

8

In April 2005, Mr. Etchason reported that he could not drive due to sleep apnea and could not get a job as a welder due to breathing problems. (Tr. 480-81). The vocational counselor found that his most limiting problems were not due to his health, but other exterior limitations such as his unreliable car. (Tr. 480). Mr. Etchason claimed that he had back problems, suffered depression, was socially isolated, and had a low frustration threshold. (Tr. 478). Paul Ringsmith of the Work Force Center tried to help Mr. Etchason get a job at Goodwill. (Tr. 471-474). However, the job possibility did not materialize when Mr. Etchason reported that he could not work for only $7.00 per hour. (Tr. 474).

On July 14, 2005, Mr. Etchason underwent a psychiatric evaluation with Dr. David Sehr. (Tr. 387). Dr. Sehr diagnosed him with bipolar disorder, anxiety disorder, and alcohol dependency in remission and assigned a GAF score of 55. (Tr. 389-90). Dr. Sehr stated that it was hard to get clear answers out of Mr. Etchason as to what his issues had been. (Tr. 389). Dr. Sehr opined that "his thought production is logical, at times showing some latency with his answers, appearing to want to choose his words carefully." (Tr. 389).  His memory appeared intact, yet his attention and concentration were somewhat diminished. (Tr. 389). Etchason's insight and judgement appeared to be intact. (Tr. 389).

On July 28, 2005, Mr. Etchason underwent a physical for employment with the Department of Transportation and denied that he had any illness or injury in the past five years. (Tr. 486).  He also denied having any other lung disease such as asthma and denied having any psychiatric disorders or severe depression. (Tr. 490). His physical exam was normal except for being overweight. (Tr. 486).

A Goodwill Situational Assessment Report was performed on July 6, 2005, to assess Etchason's work skills and abilities for employment. (Tr. 498-500). The report stated that

9

Etchason was able to do most tasks with minimal instruction. (Tr. 500). It also stated that when

the staff tried to communicate with Mr. Etchason regarding his back pain, his answers were

"evasive and unclear." (Tr. 500). Additionally, the report stated that when his shift was

completed, Mr. Etchason looked tired and as though he was in pain. (Tr. 500). The overall

assessment stated that Mr. Etchason was not ready for placement and time was needed to assess

his limitations and "try to identify what types of things he can do without causing him so much

discomfort that he needs to miss work." (Tr. 500).

A Goodwill report completed on August 3, 2005, stated that Mr. Etchason was

comfortable communicating with staff regarding his back pain, which seemed to vary day to day.

(Tr. 497). It was recommended that Mr. Etchason meet regularly with a mental health

professional and speak to a doctor about a pain management program. (Tr. 497).

Beginning on June 9, 2005, Mr. Etchason met with a counselor at the Caritas Mental

Health Clinic. (Tr. 504-510). The counselor reported Mr. Etchason struggled with depression and

low self-esteem. (Tr. 504-510). The counselor helped him to learn coping strategies to handle his

depression, including daily exercise, participating in a social activity at least once a week, and

expressing anger in a respectful fashion as those feelings arise. (Tr. 508).

3.    Vocational Expert Testimony

The ALJ asked Mr. Wayne Onken, the Vocational Expert, a hypothetical question

regarding the existence of jobs available to a person of Mr. Etchason's age, education,

experience with the following impairments and limitations: able to perform sedentary work, with

no more than occasional climbing ramps or stairs, balancing, stooping, kneeling, crouching or

crawling; learn and remember three to four step tasks; sustain mental effort at routine, repetitive

tasks for two hours at a time; interact with coworkers and supervisors for infrequent and

superficial contact; and adapt to typical stressors and changes occurring in routine, repetitive, three-to-four step, low to moderately pressured work environments. (Tr. 588-89). The vocational expert testified that a person with those limitations could perform jobs including cashier, surveillance system monitor, and gate guard. (Tr. 589-90).

     4.   <u>Plaintiff's testimony</u>

Mr. Etchason testified that he weighed 100 pounds more than he weighed five years ago. (Tr. 554). He testified that he drove to get groceries, but not much otherwise. (Tr. 555). He could not shop for long because it is painful. (Tr. 586). Mr. Etchason testified that he could not keep up the pace of truck driving any longer and could not perform welding because it restricted his breathing. (Tr. 556). He also testified that he could no longer drive a commercial truck because of his sleep apnea. (Tr. 559).

He further testified that he took medications for mental problems and high blood pressure and visited with a psychologist every two weeks. (Tr. 562-63, 568-69). He stated that he tried to perform vocational rehabilitation work, but that did not work out due to his not being able to work fast and he also could not deal with people yelling at him. (Tr. 570-72, 581, 583). He further stated upon questioning by the ALJ, that he loved to cook, but could not stand over the stove long enough to do it professionally. (Tr. 575). He stated that he tried to go fishing a couple of times a year, watched television, did some cleaning and cooking, and spent a couple of hours a day on his computer. (Tr. 577, 580, 587-88).

## III.  STANDARD OF REVIEW

Section 205(g) of the Social Security Act (42 U.S.C. §405(g)) authorizes judicial review of the Commissioner's final decision. When the Appeals Council denies the review, the ALJ's decision stands as the final decision of the Commissioner. 20 C.F.R. §416.1481. The Act

provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Thus, judicial review is limited to determining whether substantial evidence supported the ALJ's findings and whether the ALJ applied the correct legal standards in reaching his or her decision. See Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999).

Substantial evidence is more than a "mere scintilla" of evidence but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court does not try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. See Naber v. Shalala, 22 F.3d 186, 188 (8th Cir. 1994); Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987). If substantial evidence supports the ALJ decision, it must be affirmed; the decision may not be reversed simply because substantial evidence might also support a different conclusion. See Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000). The ALJ's findings must be upheld if they are supported by substantial evidence in the record as a whole. Miller v. Sullivan, 953 F.2d 417, 420 (8th Cir. 1992); Cline v. Sullivan, 939 F.2d 560, 564 (8th Cir. 1991). The Court must do more than examine the record for that substantial evidence, if any. Turley v. Sullivan, 939 F.2d 524, 528 (8th Cir. 1991). Judicial review of defendant's decision is limited to a determination of whether the decision is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); Morse v. Shalala, 32 F.3d 1228, 1229 (8th Cir. 1994).  Substantial evidence is enough evidence that a reasonable person might accept as adequate to support a conclusion. Moad v. Massanari, 260 F.3d 887, 890 (8th Cir. 2001).  Where such evidence exists, a court is required to affirm defendant's factual findings. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).

The analysis conducted by the court must include evidence in the record which detracts from the weight of the evidence supporting the ALJ's decision. Burress v. Apfel, 141 F.3d 875, 878 (8th Cir. 1998). Thus, the court must consider the weight of the evidence in the record and apply a balancing test to evidence which is contrary. Id.

The Court is required to review the administrative record as a whole and to consider:

1.    The credibility findings made by the ALJ;

2.    The education, background, work history, and age of the plaintiff;

3.    The medical evidence provided by treating and consulting physicians;

4.    The plaintiff's subjective complaints and descriptions of pain, impairment, and physical activity;

5.    Any corroboration of plaintiff's impairments by third parties; and

6.    The testimony of vocational experts based upon proper hypothetical questions setting forth plaintiff's impairments.

Cruse v. Bowen, 867 F.2d 1183 (8th Cir. 1989) (citing Brand v. Sec'y of HEW, 623 F.2d 523, 527 (8th Cir. 1980)).

However, in reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact. Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

## IV.  LEGAL FRAMEWORK

A claimant seeking disability insurance benefits bears the burden of proving that he/she is disabled within the meaning of the Social Security Act. 20 C.F.R. § 416.912(a); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The Social Security program provides benefits to people who are aged, blind, or who suffer from a physical or mental disability." 42 U.S.C. § 1382(a); Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992). Disability means that the

claimant is unable to work by reason of "medically determinable" physical or mental impairment or impairments.  42 U.S.C. § 1382c(a)(3)(A).  The impairment must be so severe that the plaintiff not only cannot do the work he or she did before, but also cannot do any other kind of substantial gainful work.  Id. The impairment must last for twelve months or be expected to result in death.  Id. The Social Security Regulations require the Administrative Law Judge to apply a five-step sequential evaluation process in determining whether the claimant is disabled. 20 C.F.R. §404.1520. The steps, in order, are:

1.      Is the claimant working in substantial gainful employment? 20 C.F.R. § 404.1520 (b);

2.      Does the claimant have a medically determinable impairment or combination of impairments which is severe? 20 C.F.R. § 404,1520 (c);

3.      Does the severe impairment or combination of impairments meet or equal in severity the listing of impairments? 20 C.F.R. § 404.1520 (d);

4.      Does the claimant have the capacity to do her past relevant work? 20 C.F.R. § 404.1520(e); and

5.      If the claimant cannot perform past relevant work, does the claimant have the capacity to do any other work existing in significant numbers in the national economy on a sustained, competitive level?

20 C.F.R. §404.1520 (f).

If at any time in evaluating the claimants disability claim under the five-step process it is determined the claimant is or is not disabled, the analysis is at an end. 20 C.F.R. § 404.1520 (a). Plaintiff must then demonstrate that her impairments render her unable to engage in any substantial gainful activity. 42 U.S.C. § 1382c(a)(3).

The claimant bears the burden of proving the existence and severity of any functional limitations caused by her impairments, as well as the burden of proving that her impairment precludes her from performing her past relevant work. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). If she meets that burden, the burden shifts to the Commissioner to establish other jobs that claimant can perform. Cunningham v. Apfel, 222 F.3d 496, 501 (8th Cir. 2000).

The process began with a determination of whether Mr. Etchason engaged in substantial gainful activity, as defined in the Regulations, at any time since the alleged onset date of the disability. 20 C.F.R. §404.1520(b). Substantial gainful activity is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §404.1572(a). The ALJ determined that Mr. Etchason had not worked in substantial gainful activity since the alleged onset date. (Tr. 25). He had engaged in some work activity, but not at or above the level of substantial gainful activity. (Tr. 25).

The second step in the evaluation process required a determination as to whether Mr. Etchason was subject to any severe physical or mental impairment. 20 C.F.R. §404.1520(c). A severe impairment is defined as one that significantly limits the individual's physical or mental ability to meet the basic demands of work activity. 20 C.F.R. §§ 404.1520(c), 404.1521, 416.920(c), 416.921. The ALJ found that Mr. Etchason was severely impaired by affective and personality disorders, chronic obstructive pulmonary disease, sleep apnea, high blood pressure, tobacco abuse, back pain disorder, and obesity. (Tr. 25-27).

The third step requires a comparison of Mr. Etchason's severe impairments with the impairments contained in Appendix 1 to Subpart P of the Regulations. 20 C.F.R. §§404.1520(d),

416.920(d). Appendix 1 contains a Listing of Impairments which describe the required level of severity for each condition. The ALJ found that based on the evidence and the testimony presented, Mr. Etchason did not have an impairment or combination of impairments that met or equaled the relevant criteria of any listed impairment. (Tr. 25-27).

The ALJ then proceeded to the next step to determine whether Mr. Etchason had the residual functional capacity to perform his past relevant work or any other work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(e). In making the finding, the ALJ must consider all of the claimant's impairments. 20 C.F.R. § 404.1520(e-f). The ALJ stated that Mr. Etchason had the residual functional capacity for lifting and carrying 5 pounds frequently, 10 pounds occasionally, sitting up to 6 hours and standing and walking up to 6 hours in a total work day; occasional climbing, balancing, stooping, kneeling, crouching, and crawling; an ability to learn and remember no more than 3 to 4 tasks; sustain mental efforts and routine and repetitive tasks for at least two hours, an ability to get along with co-workers and supervisors on a brief, infrequent, superficial basis, adapt to typical stress and routine changes; and ability to do repetitive work in low to moderately pressured environments. (Tr. 27).

The final step in the sequential evaluation involved a determination as to whether the claimant could return to any of his past relevant work or perform other work in the regional or national economy. This determination requires consideration of vocational factors.  The ALJ found that he could not perform any of his past relevant work. (Tr. 29). However, it was found that the claimant could perform a number of sedentary jobs such as cashier, surveillance system monitor, and gate guard. (Tr. 30).

Based upon his analysis of the five-step disability process, the ALJ found that the Social Security Administration met its burden in this case to prove that a significant number of jobs

16

exist in the national economy which Mr. Etchason could perform. The ALJ concluded that Mr.

Etchason did not meet the statutory criteria for a finding of disability, and that he was not

entitled to disability insurance benefits and social security income.

## V.  CONCLUSIONS OF LAW

Mr. Etchason argues that the ALJ made errors of law in his decision. This Court will

examine that decision and specifically address: (1) whether the ALJ properly determined Mr.

Etchason's physical RFC; (2) whether the ALJ properly determined Mr. Etchason's mental RFC;

(3) whether the ALJ correctly assessed the credibility of Mr. Etchason's personal complaints;

and (4) whether the ALJ correctly determined Mr. Etchason's vocational ability.

1.      The ALJ Correctly Assessed Mr. Etchason's Physical Residual Functioning
        Capacity

A claimant's Residual Functional Capacity (RFC) is what he or she can do despite his or

her limitations. 20 C.F.R. § 404.1545(a)(1).  A claimant's RFC is also a medical question. See

Lauer v. Apfel, 245 F. 3d 700, 704 (8th Cir. 2001).  The ALJ must determine a claimant's RFC

by considering the combination of the claimant's mental and physical impairments. See Pearsall

v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).  In determining a claimant's RFC, the ALJ

must consider all relevant evidence, including medical records, observations of treating

physicians and others, and claimant's own descriptions of his or her limitations.  Id.

The ALJ "bears the primary responsibility for assessing a claimant's [RFC] based on all

relevant evidence."  Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000).  Nonetheless, the RFC

determination must be supported by "medical evidence that addresses claimant's 'ability to

function in the workplace.'"  Baldwin v. Barnhart, 349 F.3d 549, 556 (8th Cir. 2003) (quoting

Nevland v. Apfel, 223 F.3d 853, 858 (8th Cir. 2000)).

In this case, the ALJ found that Mr. Etchason had the RFC to perform a reduced range of unskilled, sedentary work. Mr. Etchason argues that ALJ failed to properly weigh the evidence concerning his physical RFC. However, the Court finds that the ALJ properly assessed Mr. Etchason's physical RFC findings by relying on all of the available evidence, including the state agency physician findings. For example, one of the assessments relied upon by the ALJ was the assessment completed by Dr. Grant on October 11, 2003. (Tr. 351-59). Dr. Grant stated that Mr. Etchason could lift and carry as much as twenty pounds occasionally and ten pounds frequently, yet the ALJ included greater weight-lifting limitations in the RFC. (Tr. 28).

Mr. Etchason also contends that the ALJ's made its own RFC determination, which was not based on medical evidence. Mr. Etchason claims that the ALJ relied too much on Dr. Pogemiller's report that stated Mr. Etchason should "settle down and get a job." (Tr. 521). He states that the ALJ did not place enough weight on Dr. Oden's claim of disability. He also asserts that the ALJ did not consider Dr. Shepard's and Dr. Brett's findings, as well as his obesity, sleep apnea, back pain, and headaches. In short, Mr. Etchason argues that the ALJ did not give enough weight to some findings.

However, the ALJ did take all of the evidence into account in making his determination. Each of the arguments made by Mr. Etchason was contradicted by other medical opinions or other evidence. Mr. Etchason's first argument fails because the ALJ's RFC was supported by the medical assessments of Dr. Grant and Dr. Zarama. (Tr. 28). Moreover, an RFC is not based on medical evidence alone and the Court finds that ALJ did take all evidence into account in making his determination. With respect to Dr. Oden, his determination of disability was only temporary and was based on Mr. Etchason's issues with elevated blood pressure, which were back to normal after one month. (Tr. 313-314). Dr. Shepard's statements were made in 2001,

prior to the alleged disability onset date. (Tr. 398). Dr. Brett's definition of disability was different than the Agency's definition, as noted by the ALJ, and therefore not entitled to significant weight. (Tr. 28).[2] Furthermore, Dr. Brett in September 2004 stated that Plaintiff was disabled due to a mental impairment, but no further psychological counseling or treatment was prescribed. (Tr. 420).  The Court would also add that a month earlier, Dr. Brett indicated in a DOT fitness exam that Etchason qualified to work as a truck driver for one year notwithstanding his depression. (Tr. 421-30). As for his obesity, Mr. Etchason does not cite to medical evidence that suggests that his obesity imposed greater limitations than the sedentary work the ALJ found he could perform. His sleep apnea was considered "severe" within the meaning of the regulations, but not severe enough to "meet or medically equal" one of the impairment listings. (Tr. 25).  The Court also agrees with the Commissioner's argument that the hazards Etchason would encounter at a sedentary exertion level did not make his sleep apnea a problem. See Def.'s Mem. 26 [Docket No. 18]. In addition, the ALJ found that his backaches were not severe impairments because the pain resolved and Mr. Etchason was able to return to work. (Tr. 26). His reports of back aches were usually explained by his exertion level in the days preceding that complaint, such as moving furniture (Tr. 392), shoveling snow (Tr. 301-02) or fishing on ice (Tr. 302).

      Therefore, the Court finds ALJ correctly took all of the evidence in the record into account and properly evaluated Mr. Etchason's physical RFC.

---

[2] An opinion of disability by a physician is entitled to no special significance at all since that is an opinion reserved to the ALJ. 20 C.F.R. § 404.1527(e)(3); Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005)("A medical source opinion that an applicant is 'disabled' or 'unable to work,' however, involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight.").

2.      The ALJ Correctly Assessed Mr. Etchason's Mental RFC Findings

Mr. Etchason argued that the ALJ had a duty to obtain additional information to ascertain the limitations of his mental conditions and should have obtained a consultative evaluation of Mr. Etchason with IQ testing. Nevertheless, the Court finds that his intellectual functioning is not an issue in this case and it has never been suggested that Mr. Etchason was disabled based on his intelligence. Moreover, the evidence even describes Mr. Etchason as a fast learner of average intelligence. (Tr. 223, 319, 500).

Mr. Etchason next contends that the ALJ failed to consider the findings of Dr. Larson, a state agency psychologist who offered an assessment in 2001. This assessment, however, is prior to his alleged disability onset date.  In fact, he worked for a year after that assessment was completed until 2002 when he was laid off. (Tr. 89-91, 111, 152, 525-27).

He also argues that the ALJ erred by not taking Dr. Kuhlman's findings from the "Summary Conclusions" portion of the form he completed into account.  The Court is not persuaded by Plaintiff's argument that the failure of the ALJ to include the "Summary Conclusions" of Dr. Kuhlman was an indication that the ALJ preferred his own analysis over the analysis of Dr. Kuhlman.  Moreover, the Court finds that the ALJ's failure to cite certain portions of the record does not indicate that Dr. Kuhlman's opinion were not taken into consideration.[3]

---

[3] The Court would note that Plaintiff's attorneys advanced a similar argument in the Western District of Wisconsin, and the court found that "to the extent the plaintiff is suggesting that the ALJ was required to incorporate verbatim each of the marked and moderate limitations identified by the state agency doctors on the 'Summary Conclusions' portion of the mental RFC form, she is barking up the wrong tree." Lembke v. Barnhart, 2006 WL 3834104, at *8 (W.D. Wisc. Dec. 29, 2006).

Mr. Etchason further cites to other evidence that supports his position that the ALJ made an improper mental RFC determination. This evidence includes his claims of chronic attention deficits, and reports of nausea and vomiting. He also argues that the ALJ did not take other medical evaluations into account, such as the evaluations of Dr. Handrich and Dr. Meller.

Nonetheless, his attention deficits were mere reports of Mr. Etchason claiming to have those symptoms, not actual limitations inconsistent with those the ALJ found. His claim of nausea and vomiting due to taking Lithium did not support any mental limitation. (Tr. 234-36). The therapist whom he sought out to get a medical opinion recommended a psychiatric evaluation, but did not mention mental limitations. (Tr. 319-320).   As for Dr. Handrich's evaluation in September 2003, these were again reports stated by Mr. Etchason to Dr. Handrich and were not medical findings. (Tr. 316).  While Dr. Meller diagnosed Mr. Etchason with bipolar disorder, and assigned a GAF score of 50, this diagnosis was made after only one visit.  The prevailing rule in the Eighth Circuit states that "the report of a consulting physician who examined the claimant once does not constitute 'substantial evidence' upon the record as a whole..." Turpin v. Bowen, 813 F.2d 165, 170 (8th Cir. 1987).

In conclusion, Mr. Etchason relies on his own statements to mental health providers, but cites no mental health opinion offering limitations that are inconsistent with the ALJ's mental RFC. He fails to cite any medical opinion that is inconsistent with the state agency psychologists' opinion that the ALJ relied upon. He claims that the ALJ should have adopted the evaluations of doctors and therapists that have reported what Mr. Etchason has told them, but has not provided an independent basis of mental limitations beyond what is stated by the ALJ. Thus, the Court finds that the ALJ's opinion of Mr. Etchason's mental RFC was supported by all of the evidence presented, and the ALJ made the proper mental RFC determination.

3.     <u>The ALJ Correctly Found Mr. Etchason's Subjective Complaints Not Credible</u>

Mr. Etchason argues that the ALJ made an improper credibility finding in determining his RFC assessment. However, the Court finds that the facts show that the ALJ considered the appropriate factors and his findings were supported by the record.

The ALJ questioned Mr. Etchason's credibility based on his daily activities that were inconsistent with his allegations of disability. (Tr. 29). Mr. Etchason engaged in fly fishing and fly tying, ice fishing, playing the guitar, touring, and going to movies. (Tr. 26, 479). He also performed welding tasks in his back yard, even though he claimed that he could not weld anymore for a living. (Tr. 26, 502). He also reported that he drove, cooked, watched children, pursued his hobbies, performed yard work, and read. (Tr. 26, 169).

The ALJ's consideration of all of these activities was appropriate. <u>See</u> 20 C.F.R. § 404.1529(c)(3)(I); <u>Harris v. Barnhart</u>, 356 F.3d 926, 930 (8th Cir. 2004)(stating it is not unreasonable for the ALJ to note daily activities in determining the inconsistency with disabling pain). The ALJ evaluated the entire record, including the claimant's testimony within the provisions of <u>Polaski v. Heckler</u>, 739 F.2d 1320 (8th Cir. 1984).[4]  739 F.2d 1320 (8th Cir. 1984).

------

[4] <u>Polaski v. Heckler</u> states as follows:

The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:

1. the claimant's daily activities;
2. the duration, frequency and intensity of the pain;
3. precipitating and aggravating factors;
4. dosage, effectiveness and side effects of medication;
5. functional restrictions.

The ALJ must take into account, but does not need to discuss how each factor relates to the plaintiff's credibility. Casey v. Astrue, 503 F.3d 687, 695 (8th Cir. 2007). The ALJ may discount subjective complaints when they are inconsistent with the evidence as a whole. Id.

Mr. Etchason argues that the ALJ should not have determined that his symptoms were not disabling because they were somewhat controlled by medication. (Tr. 29). However, the regulations states that the ALJ can consider the effectiveness of medications. 20 C.F.R. § 404.1529(c)(3)(iv). The regulations state:

> (3) Consideration of other evidence. Since symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms. The information that you, your treating or nontreating source, or other persons provide about your pain or other symptoms (e.g., what may precipitate or aggravate your symptoms, what medications, treatments or other methods you use to alleviate them, and how the symptoms may affect your pattern of daily living) is also an important indicator of the intensity and persistence of your symptoms.
> . . . .
>
> Factors relevant to your symptoms, such as pain, which we will consider include:
> . . . .
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> 20 C.F.R. § 404.1529(c)(3)(iv).

_____

The adjudicator is not free to accept or reject the claimant's subjective complaints *solely* on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984) (emphasis in original.).

Therefore, it was appropriate for the ALJ to note that Mr. Etchason stated in July 2005 that his medications were stabilizing, and he did not want them changed. (Tr. 29).

The ALJ also found that Mr. Etchason underestimated his work ability. He reported to Goodwill Industries in August 2005 that he had back pain that restricted his ability to work, yet reported to others that he had no back pain (Tr. 486), and he received clearance to work eight or more hours per day. (Tr. 519). This ability to work when needed is inconsistent with his claim of disability. (Tr. 29).

The Court should normally defer to the ALJ's credibility determination if the ALJ gave good reasons for discrediting the claimant's testimony. Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). Overall, the ALJ gave good reasons, citing specific inconsistencies in the record to support his credibility analysis. Even if the record could support more than one reasonable conclusion, the reviewing court should affirm the Commissioner's reasonable conclusion. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992)

Therefore, the Court finds that ALJ's credibility determination was well supported and should be affirmed.

### 4.    The ALJ Correctly Determined Mr. Etchason's Vocational Ability

Mr. Etchason argues that the ALJ's hypothetical question to the vocational expert ("VE") did not include his claims about being confused, disorganized, unable to remember, becoming tired and frustrated, and borderline intellectual functioning. Mr. Etchason also claims that the ALJ needed to verify that the VE testimony was correct.

To the contrary, the Court finds that Mr. Etchason's personal reports and complaints were not supported by the record and subject to the same credibility concerns discussed above. The ALJ did ask the vocational expert if his testimony was consistent with the DOT and the

24

vocational expert stated that it was consistent. (Tr. 590). SSR 00-4p requires that the ALJ must

verify the testimony only if there is a conflict between the VE evidence and the DOT. SSR- 00-

4p. The VE explained that there might be a conflict with some of the cashier II jobs when

changing from light to sedentary classification, but the other jobs had no conflict with the DOT

classification. (Tr. 589-90). Finally, the VE stated that these jobs are sufficient in number to

establish the existence of jobs in the economy Mr. Etchason could perform.

 Thus, the ALJ correctly determined Mr. Etchason's vocational ability.

## VI.   RECOMMENDATION

The ALJ properly assessed the evidence and the record as a whole. The ALJ's

assessment of Mr. Etchason's credibility is supported by substantial evidence.

For the foregoing reasons, it is hereby recommended that:

1.  Plaintiff's Motion for Summary Judgment be denied [Docket No. 13];

2.  Defendant's Motion for Summary Judgment [Docket No. 17] be granted**.**

3.  The Complaint in this matter be dismissed with prejudice.

Dated: August 21, 2008                            s/ Arthur J. Boylan

                                                 ARTHUR J. BOYLAN
                                                 United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing
with the Clerk of Court and serving on all parties, on or before **September 2, 2008**, written
objections which specifically identify the portions of the proposed findings or recommendations
to which objection is being made, and a brief in support thereof. A party may respond to the
objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall
be limited to 3500 words. A judge shall make a de novo determination of those portions to which
objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court,
and it is, therefore, not appealable to the Circuit Court of Appeals.